**Jerome GOLDBERG and Marjorie Goldberg, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 85–5632.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1986.

Decided May 14, 1986.

Robert C. McDaniel, Burt Barnett, Law Corp., Norwalk, Cal., for plaintiffs-appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Mary F. Clark, U.S.

Dept. of Justice, Washington, D.C., for defendant-appellee.

Before SCHROEDER and FLETCHER, Circuit Judges, and WILKINS,* District Judge.

SCHROEDER, Circuit Judge.

The Goldbergs appeal from the judgment of the district court in favor of the government and disallowing them a refund based upon their claim of a $14,667 interest deduction. The interest was alleged to have been paid on an indebtedness to Anglo Dutch Capital Corporation (Anglo Dutch), now defunct. The district court concluded that neither the "indebtedness" to Anglo Dutch nor the claimed interest payment had any substantial economic purpose or effect. It held that they were shams undertaken for the purpose of tax reduction. *See Knetsch v. United States*, 364 U.S. 361, 365–66, 81 S.Ct. 132, 134–35, 5 L.Ed.2d 128 (1960); *Thompson v. Commissioner*, 631 F.2d 642, 646 (9th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). We affirm.

The "transactions" in this case begin where the transactions in *Thompson v. Commissioner* left off. In *Thompson*, a series of transactions resulting in the issuance of $6,800,000 in promissory notes assumed by Del Cerro Associates, a limited partnership, was held to constitute a tax avoidance scam lacking in economic substance. In 1967, Del Cerro agreed with World Minerals, the holder of the notes, to cancel the interest obligation. In succeeding years, the guiding hand of Harry Margolis arranged agreements whereby the Del Cerro partners were to pay off the indebtedness. In a manner not explained in this record, the indebtedness was reduced from $6.8 million to slightly less than one million dollars. The Goldbergs were to pay off their share of that indebtedness, $88,988.45, corresponding to their negative capital account balance in the partnership. Pursuant to an agreement with Margolis which was not reduced to writing, the loan, originally interest-free, was extended with a ten percent interest rate. In August 1976, Margolis arranged for that loan to be paid off by another loan in the amount of $103,600 from the Goldberg family's foreign trust, which had been organized by Margolis under Bahamian Law with an initial corpus of $500.

On August 23, 1976, Antigua Banking Limited, an enterprise owned by Margolis, received a "cable advice" that $103,600 had been transferred to the Goldbergs, care of Antigua Banking Ltd., from Daoheng Bank, Ltd., Hong Kong. On the same day a Margolis employee prepared and signed a check drawn on the Goldbergs' Barclays bank account in the amount of $103,655 and payable to Anglo Dutch. Anglo Dutch deposited the funds in its account in Barclays Bank. Appellants claim $14,667 as an interest deduction.

The district court concluded that because Margolis was "so inextricably entwined in this transaction," his practices were relevant to the determination of whether the transactions involved in this case were shams. The court stated that

> Margolis transactions are characterized by convoluted transfers of overvalued property rights, circular money movements among foreign trusts, delayed drafting, signing and backdating of documents, and client oblivion to the financial realities of their investments. Obfuscation of the facts behind offshore trusts is Margolis' primary shield from taxation. The contrived nature of his schemes has been succinctly described as a "labyrinthian design of tax avoidance ... and a concomitant hopelessness from the beginning of any economic benefit or effect, other than tax reduction ..." (citations omitted).

The court went on to state that

> Margolis transactions constitute financial gymnastics, devoid of economic sub-

---

* Honorable Philip C. Wilkins, Senior United States District Judge for the Eastern District of California, sitting by designation.

stance. Margolis clients typically purchase highly inflated investments and tax shelters, oblivious of the economics of the investment. Indeed, proclaimed ignorance of the facts is a hallmark of Margolis clients. Even so, their ignorance is explained by the fact that there is no economic risk, since the transactions often are not legally binding, but shams. (citations omitted).

The district court pointed out that the transactions in this case were based upon the same "indebtedness" which had been held to have been a sham from its very inception. *Thompson v. Commissioner*, 66 T.C. 1024, 1050 (1976), *aff'd*, 631 F.2d 642 (9th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110 (1981). Also persuasive to the district court was the plaintiffs' lack of knowledge of the transactions at issue here and their blind reliance upon Margolis, to the extent of having one of his employees sign a check drawn from their bank account in the amount of $103,655.

■ Appellants first contend that the district court's conclusion that the claimed indebtedness and interest payment lacked economic substance is unsupported by the evidence. This contention is utterly without merit. In a case such as this one, in which the Commissioner has made a deficiency determination, the taxpayer has "the burden of producing enough evidence to rebut the deficiency determination and the burden of persuasion in substantiating a claimed deduction." *Valley Title Co. v. Commissioner*, 559 F.2d 1139, 1141 (9th Cir.1977); *see Meridian Wood Products Co. v. United States*, 725 F.2d 1183, 1189 (9th Cir.1984); *Rockwell v. Commissioner*, 512 F.2d 882, 885–87 (9th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). Because the genuineness of an indebtedness is at issue here, the court must focus on the substance of the transaction, rather than its form. *Knetsch v. United States*, 364 U.S. at 365–66, 81 S.Ct. at 134–45; *Foster v. Commissioner*, 756 F.2d 1430, 1436 (9th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 793, 88 L.Ed.2d 770 (1986); *Beck v. Commissioner*, 678 F.2d 818, 821 (9th Cir.1982).

The burden is therefore on the taxpayer to show that the form of the transactions reflects their substance.

■ The underlying indebtedness in this case is the same as that shown to have been a sham in *Thompson v. Commissioner*. The district court properly discredited the appellants' own testimony concerning these transactions in view of their total lack of knowledge and their reliance upon Margolis. The transactions were wholly lacking in the indicia of arms length transactions, and the record is devoid of any indication that the taxpayers incurred any actual economic liabilities of any substance. The plaintiffs have not met their burden.

■ Appellants next contend that revenue agent Karis presented inadmissible expert testimony. Karis, an experienced revenue agent, was testifying concerning summaries of voluminous tax records, as expressly permitted by Fed.R.Evid. 1006. *See United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 376 (1979). The district court considered the taxpayers' objection to his testimony as being that of an expert, but found that no expert opinions or conclusions were offered. Our review of the transcript reveals that there was no abuse of discretion in permitting the testimony.

■ The appellants object to the court's receipt of the government's memorandum of law on the applicability of the *Thompson* decision. The memorandum was filed approximately one week before trial. The memorandum was neither a pleading, governed by Local Rule 3 and Fed.R.Civ.P. 12, nor a pretrial memorandum prepared for purposes of a pretrial conference as contemplated by Local Rule 9.5. Its submission thus violated no rules. Appellants have not shown that they lacked opportunity to respond to the memorandum or that they were prejudiced in any way. Its relevance was manifest given the relationship between the transactions in this case and those in the *Thompson* case.

■ The Goldbergs objected to admission of numerous exhibits consisting of the Del Cerro partnership tax returns, and documents reflecting the Goldbergs' capital account at Del Cerro for the years 1966 through 1972, and that account as reduced by the Goldbergs' pro rata share of the transactions held to be a sham in *Thompson.* The trial court properly ruled that these exhibits were relevant to the issue of whether the deductions claimed in this case were bona fide.

■ Finally, the Goldbergs argue that the district court abused its discretion in admitting the deposition testimony of Florence Valkenberg. Mrs. Valkenberg's testimony was relevant. She was intimately familiar with the tax avoidance activities of Margolis, themselves relevant in a case like this in which a client claims a deduction based on a transaction he structured. *See Karme v. Commissioner,* 673 F.2d 1062, 1064 (9th Cir.1982). Because Valkenberg lived outside the subpoena power of the court and indicated an unwillingness to appear voluntarily, the district court did not abuse its discretion in finding that the unavailability requirement for admitting deposition testimony had been met.

Affirmed.