**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Gerald L. SCHULMAN,
Defendant-Appellee.**

No. 86–5251.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 2, 1987.
Decided May 20, 1987.

Donald Searles, Washington, D.C., for plaintiff-appellant.

Bruce Hochman, Beverly Hills, Cal., for defendant-appellee.

Before WALLACE, TANG and ALARCON, Circuit Judges.

TANG, Circuit Judge:

The government appeals the district court's dismissal of 23 counts of a 25–count indictment charging Schulman with conspiracy, tax fraud and perjury. The charges arose from the promotion, sale and administration of a tax shelter scheme Schulman developed, in which 91 limited partnerships purchased buildings leased to the United States Postal Service, public utilities and state governmental units, and claimed interest deductions equal to each limited partner's total capital contribution. The district court dismissed the conspiracy and tax fraud charges on the ground that the government could not prove the element of willfulness essential to convictions under 26 U.S.C. § 7206(1) (making or subscribing a false tax return) and 26 U.S.C. § 7206(2) (aiding in preparation and presentation of a false tax return) because the government could not show that the type of tax shelter promoted by Schulman was

clearly illegal in 1978 and 1979. We reverse.

## BACKGROUND

Schulman is an accountant who has done tax planning for clients since the early 1970's. He was a client of tax attorney Harry Margolis for several years beginning in 1974 and received advice about real estate tax shelters based on deductions generated by circular financing. *See, e.g., Goldberg v. United States,* 789 F.2d 1341 (9th Cir.1986). In 1978 and 1979 Schulman created 91 real estate limited partnerships for the purpose of acquiring various public buildings to be purchased through long-term purchase money mortgages, requiring no down payment and bearing interest at below market rates. Schulman promoted the sale of the partnership interests by representing that all money invested would be deductible on 1979 tax returns as an interest expense. Schulman was the general partner in each limited partnership.

The promised tax objective was realized through a series of financing and loan transactions between the partnerships and two foreign corporations: Hexagram, a Netherlands Antilles corporation, and Parallax, a Panamanian corporation. The corporations and the limited partnerships all had bank accounts at Banco de Iberoamerica, in Panama, and at Barclays Bank in Holland. The partnerships each secured a short-term loan from Hexagram and executed promissory notes to Hexagram bearing interest at 10%. Each partnership delivered the funds borrowed from Hexagram to Parallax under a financing agreement in which the partnership agreed not to charge any interest as consideration for Parallax's agreement to obtain favorable long-term financing for the purchase of the real estate. Parallax deposited the money in the Panamanian Bank with instructions to loan it to Hexagram. These loans and transfers thus were effected through the use of circular financing, with the same transaction being repeated 91 times in two days on October 31 and December 5, 1978; the result was that $252 million was "loaned" to the Schulman partnerships.

Some twelve to fourteen months later, on December 27, 1979, the principal amount ($220 million) was repaid to Hexagram by reversing the circle using the accounts at Barclays Bank. When Parallax returned the money to each partnership, it in turn repaid Hexagram the loan plus interest. The interest payment equaled the initial capital contribution of the partners (approximately $28 million).

There is no dispute that the limited partners made capital contributions, or that the partnerships did purchase and do own real buildings in the United States, or that some of the partnership transactions had economic substance apart from their tax consequences. The government does not argue that Schulman, the partners, or the partnerships had any ownership interest in the two foreign companies or that the companies were not duly organized under the laws of the Netherlands Antilles or Panama.

The government alleges that the loan and financing transactions between the Schulman partnerships and Hexagram and Parallax had no economic substance. There was not $252 million in cash to be loaned. Rather, there was a collected fund available for cash withdrawal of as little as one thousand dollars. The thousand dollars was circulated through the accounts until a total of $252 million was reached. Thus these transactions were mere "check swaps" which cannot be characterized as loans. Since there were no loans, the December 1979 cash payments to Hexagram, the government contends, cannot be characterized as interest payments.

The IRS began a civil audit in 1982 of the 1979 partnerships and in August 1983 reached a Settlement Plan Agreement in which the IRS agreed to permit 70% of the interest deductions to be taken in the first year of investment and the balance to be deducted over the term of the purchase money notes executed by the partnerships to acquire the leased properties. Mr. Schulman agreed to restructure future transactions so that no foreign entities would be involved. The Service, however, abandoned the agreement in 1984 and insti-

tuted a summons enforcement proceeding in which it took Schulman's deposition.

Count I of the indictment—the conspiracy count—alleges that Schulman organized and promoted the Schulman partnerships, orchestrated the financing transactions which generated the false loans and falsely reported the payments as interest on federal tax filings. The substantive tax counts arise from the tax plan and charge that Schulman aided and assisted in preparation of false and fraudulent returns filed by the limited partnerships (Counts II–XIII) and individual partners (Counts XIV–XIX) in violation of 26 U.S.C. § 7206(2) and by Schulman himself (Count XX) in violation of 26 U.S.C. § 7206(1). Counts XXI–XXV charge that Schulman perjured himself while giving deposition testimony in violation of 18 U.S.C. § 1623.

Schulman moved to dismiss the indictment and for a bill of particulars. The district court granted Schulman's motion to dismiss the tax fraud and conspiracy counts on the ground that the due process defense was legally sufficient because in 1978 and 1979 this type of circular financing was not clearly illegal. The district court dismissed two of the perjury counts (Counts XXII and XXIII) because the questioning had been too ambiguous. The government agreed to dismissal of Count XXV as multiplicitous.

## ANALYSIS

### I. Dismissal of Tax Shelter Counts

#### A. *Standard of Review*

■ We review the sufficiency of an indictment de novo. *United States v. Buckley,* 689 F.2d 893, 897 n. 4 (9th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

A Rule 12(b)(1) motion to dismiss is appropriately granted when it is based on questions of law rather than fact. *United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1452 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). Here Schulman argued that he lacked notice of the criminality of his conduct, and that this constitutional deficiency provided a complete due process defense to the charges, and that the legal defense was capable of determination without trial. The district court agreed. The court assumed all facts alleged and found them insufficient to create a triable issue of fact with regard to the due process defense. The district court relied on *United States v. Dahlstrom,* 713 F.2d 1423, 1428 (9th Cir.1983), *cert. denied,* 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984) in deciding that the law in 1978 and 1979 was not sufficiently clear as to the legality of the tax shelter program Schulman promoted to find Schulman had the requisite intent to violate the law. Because the district court ruled as a matter of law, we review the holding de novo. *United States v. Russell,* 804 F.2d 571, 574 (9th Cir.1986).

#### B. *Is Willfulness a Factual Question?*

The government first argues that the district court erred in dismissing the indictment as a matter of law because the question of Schulman's willfulness is a factual question of his subjective intent, not a legal question of the objective certainty in the law. The government argues that willfulness is a question of subjective intent because when a defendant knows he is committing a wrongful act it does not matter that "there is no litigated fact pattern precisely in point." *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 96 (2d Cir.) (quoting *United States v. Brown,* 555 F.2d 336, 339–40 (2d Cir.1977)), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). The government thus insists that if a defendant has the willful intent to commit a wrongful act, but the act is not illegal as a matter of law, the indictment should be dismissed not for the failure to establish intent but because another essential element of the charged offense is missing. We need not decide the issue because even if the government is correct, we still must review the district court's determination that the tax shelter scheme Schulman promoted was not clearly illegal in 1978 and 1979.

## C. *Legality of Schulman's Tax Shelter*

The district court dismissed the indictment because it believed *Dahlstrom*, 713 F.2d at 1428, stands for the proposition that when the legality of a tax shelter is unsettled by clearly relevant precedent an indictment must be dismissed because the requisite intent is lacking. *Dahlstrom* is more properly read as a case barring the "[p]rosecution for *advocacy* of a tax shelter program in the absence of any evidence of a specific intent to violate the law" because such prosecution "is offensive to the first and fifth amendments." *Id.* at 1429 (emphasis added); *see also Russell*, 804 F.2d at 576 (Ferguson, J., concurring) (*Dahlstrom* "was primarily a First Amendment case involving pure advocacy"). In this case, Schulman did not merely advocate the tax shelter in question, he was involved in "orchestrating the generation of the questionable tax deduction." *United States v. Crooks*, 804 F.2d 1441, 1449 (9th Cir.1986) (distinguishing *Dahlstrom* in a factually similar case).

Of course even in a case involving more than mere advocacy, the inquiry must be whether the law clearly prohibited the conduct alleged in the indictment. There is no dispute in this case that the law is well settled that sham transactions are illegal. *Commissioner v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945); *Knetsch v. United States*, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); *United States v. Clardy*, 612 F.2d 1139, 1151–53 (9th Cir.1980). In *Court Holding* the Supreme Court established the fundamental doctrine that the true nature of a transaction may not "be disguised by mere formalisms, which exist solely to alter tax liabilities." 324 U.S. at 334, 65 S.Ct. at 708. The Supreme Court has also clearly held that for an interest payment to be deductible, the interest must be paid on genuine indebtedness. *Knetsch*, 364 U.S. at 365–66, 81 S.Ct. at 134–35. When there is no genuine indebtedness underlying the interest payment, the transaction is a sham. *Id.* Relying on *Knetsch* we upheld a conviction for false return information in a case of claimed deductions for interest payments because our analysis revealed "that there was no substance behind the forms employed." *Clardy*, 612 F.2d at 1152.

In this case the district court found that the transactions were not a sham because "real money" was expended, and that the transactions were not devoid of economic substance because the partnerships each acquired a real building. We believe the financing arrangement has to be evaluated separately on its own merits and cannot be found to have substance merely because the partnerships acquired real property or invested "real" money. The only question is whether there were real interest payments on genuine indebtedness. The indictment sufficiently alleges a lack of substance behind the check cycle to sustain the charges against a motion to dismiss.

The transactions in this case are similar to those we held to be a sham in *Crooks*, 804 F.2d 1441. In *Crooks* the defendant devised a tax shelter in which investors purchased interests in limited partnerships which owned coal leases and claimed deductions three times the amount of their investment for payments denominated advance mineral royalty payments. *Id.* at 1443. Because the partnerships lacked the assets to make the royalty payments they created a "check cyclone" with simultaneous, same bank transfers of checks in a circular transaction which we characterized "as borrowing money, paying oneself a royalty payment, and paying back the lender, leaving each party in the same position it was in before the transaction." *Id.* at 1443, 1449. In *Crooks* we upheld a conviction for conspiracy and filing false returns on facts similar to those alleged in the Schulman indictment. We are persuaded the allegations in this case are sufficient to withstand dismissal.

We agree with the government that the Schulman financing transactions were a sham that lacked substance because there was no economic risk associated with the purported loans. *See Goldberg v. United States*, 789 F.2d 1341, 1343 (9th Cir. 1986) (indebtedness a sham when taxpayers do not incur "any actual economic liabilities

of any substance"). Schulman does not dispute that there were no actual loans of real money in the amount of $252 million; further the government contends that the promissory notes in this case are wholly unenforceable. Assuming that contention is true, there is no risk of any sort in the underlying financing transactions and the $28 million was improperly characterized as a deductible interest expense. Such a sham transaction was clearly prohibited by law in 1978 and 1979, and thus dismissal of the indictment was improper since an intent to violate the law cannot be ruled out as a matter of law.[1]

## II. Dismissal of Perjury Counts

### A. *Standard of Review*

The legal sufficiency of a perjury indictment is reviewed de novo. *United States v. DeCoito*, 764 F.2d 690 (9th Cir.1985).

### B. *Dismissal of Counts XXII and XXI-II*

■ Count XXII charged that Schulman lied when he stated "all ... the complete sets" of books and records for the partnerships had been turned over to the IRS because in truth he "well knew and believed, the complete sets of books for each partnership had not been turned over." The district court held that the truth paragraph did not specify what records and statements were not provided by the defendant, and thus the count failed to meet the standard of *United States v. Cowley*, 720 F.2d 1037, 1042 (9th Cir.1983), *cert. denied*, 465 U.S. 1029, 1104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). *Cowley* indicates an indictment must set out the "allegedly per-

jurious statements and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge." *Id.* (quoting *United States v. Tonelli*, 577 F.2d 194, 195 (3d Cir.1978)). Schulman's statement was volunteered and nonresponsive to any question. In the context of his discourse on the mechanics of the partnership transactions with Parallax and Hexagram, Schulman stated that each partnership had its own set of books and that the complete sets had been turned over to the IRS. What Schulman may have meant is unclear when viewed in context, since he may have been talking only about the records called for in the subpoena or only about the partnerships that dealt with Parallax and Hexagram. It was incumbent on the government attorney "to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination." *Bronston v. United States*, 409 U.S. 352, 358–59, 93 S.Ct. 595, 600, 34 L.Ed.2d 568 (1973). Here the attorney failed "to pin the witness down to the specific object of the questioner's inquiry." *Id.* at 360, 93 S.Ct. at 601. Because the meaning of Schulman's answer is ambiguous we agree with the district court that the truth paragraph did not stand out in stark contrast to the allegedly perjurious statement.

■ Count XXIII charged that Schulman lied when he denied he knew what Parallax did with the money received from the partnerships and when he said he had no first-hand knowledge concerning Parallax's depositing of the money because Schulman himself deposited the checks into the Parallax account. The government attorney

---

1. The district court's other reasons for dismissing the indictment are unsound. The court thought that the 1975 prosecution of Harry Margolis for tax fraud involving a theory of sham circle transfers, which resulted in Margolis's acquittal, would have served to make Schulman believe his activities were permissible. The government is correct in saying Schulman's knowledge and understanding of the implications of the Margolis trial is a factual question for the jury. The disposition of the Margolis case offers little guidance on the law at the time since the government of course could not appeal from the acquittal. The district court cited two other attorney designed tax plans approved by this court as a reason for dismissal of the Schul-

man indictment. The cases are inapposite because they are not sham transaction cases. *See Stern v. Commissioner*, 747 F.2d 555 (9th Cir. 1984); *Roberts v. Commissioner*, 643 F.2d 654 (9th Cir.1981). The district court also thought the government's proposed Settlement Plan entered into with Schulman constituted evidence of the legality of the tax shelters. Aside from the fact that subsequent opinions are irrelevant to an inquiry into the objective state of the law at a prior time, as the government notes, it did not have proof of the sham nature of the transactions when it entered into the agreement. Once the government obtained that evidence it cancelled the agreement.

asked Schulman if he knew whether Parallax deposited the money from the partnerships. Schulman said he did not know. The government says that in truth Schulman acted for Parallax by initialing and depositing the deposit tickets and checks into the Parallax account. The government contends this contrast between the answer and the truth is sufficient for a charge of perjury. We agree with the district court that there is not a stark contrast between the statements because the government attorney did not ask questions specific enough to pin down precisely what Schulman's role had been. *Bronston*, 409 U.S. at 360, 93 S.Ct. at 600.

## CONCLUSION

We conclude that, assuming the truth of the allegations in the indictment, the defendant was engaged in promoting a tax scheme, the illegality of which he had fair notice. The district court erred in granting defendant's motion for dismissal of 20 counts. The court did not err in dismissing the two perjury counts.

AFFIRMED in part, REVERSED in part and REMANDED.