IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 8, 2020

## STATE OF TENNESSEE V. CALVIN SMITH and HAYDEN BOWEN

**Appeal from the Criminal Court for Shelby County**
No. 18-07315          Carolyn W. Blackett, Judge

_____

### No. W2019-01227-CCA-R3-CD

_____


The Shelby County Grand Jury indicted Defendants Calvin Smith and Hayden Bowen for attempted first degree murder in counts one and three and for employment of a firearm during the commission of a dangerous felony in counts two and four. Each Defendant filed a motion to dismiss the indictment, arguing that the failure of the State to name a specific victim in counts one and three violated their right against double jeopardy. Following a hearing, the trial court dismissed all counts of the indictment. The State appeals as of right from the trial court's dismissal of Defendants' indictment, arguing that the trial court improperly dismissed the indictment based on the weight of the evidence and that the indictment provided sufficient protection against double jeopardy. After a thorough review, the judgments of the criminal court are reversed, the indictment is reinstated, and the case is remanded for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3(c) Appeal as of Right; Judgments of the Criminal Court Reversed and Remanded

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stephen Ragland, Assistant District Attorney General, for the appellant, State of Tennessee.

Jason Ballenger, Memphis, Tennessee, for the appellee Calvin Smith

Mark Mesler, Memphis, Tennessee, for the appellee Hayden Bowen.

# OPINION

## Factual and Procedural History

### *Indictment*

In count one of the indictment, the Grand Jury found that Defendants

on December 3, 2017[,] in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully attempt to commit the offense of First Degree Murder, as defined in T[ennessee] C[ode] A[nnotated] [section] 39-13-202, in that they did unlawfully, intentionally, and with premeditation attempt to kill a first individual whose name is unknown to the members of the Grand Jury, but who is wearing a light colored T-shirt and pants and recorded during the commission of this offense on multiple angles of surveillance video, in violation of T[ennessee] C[ode] A[nnotated] [section] 39-12-101, against the peace and dignity of the State of Tennessee.

In count three of the indictment, the Grand Jury found that Defendants

on December 3, 2017[,] in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully attempt to commit the offense of First Degree Murder, as defined in T[ennessee] C[ode] A[nnotated] [section] 39-13-202, in that they did unlawfully, intentionally, and with premeditation attempt to kill a first individual whose name is unknown to the members of the Grand Jury, but who is wearing a dark colored shirt and pants and recorded during the commission of this offense on multiple angles of surveillance video, in violation of T[ennessee] C[ode] A[nnotated] [section] 39-12-101, against the peace and dignity of the State of Tennessee.

Counts two and four of the indictment charged Defendants with employing a firearm during the commission of a dangerous felony, as listed in counts one and three.

### *Motions to Dismiss*

Prior to trial, Defendant Bowen filed a motion to dismiss, relying on *State v. Wyatt*, 24 S.W.3d 319 (Tenn. 2000). He argued that the indictment failed to "provide the defendant with protection against double jeopardy" because the indictment failed to list a

specific victim in counts one and three and because the identities of the victims were unknown to the State.

Defendant Smith also filed a motion to dismiss, arguing that the indictment had a fatal defect for failure to list a specific victim in counts one and three. In the motion, Defendant Smith acknowledged that, in *State v. Clark*, 2 S.W.3d 233 (Tenn. Crim. App. 1998), this court held that an indictment charging a defendant with attempted aggravated robbery was not insufficient for failure to list a specific victim. However, he argued that *Clark* "did not consider the victim's identity as it relates to double jeopardy" but instead considered the victim's identity as related to the defendant's ability to adequately prepare for trial.

The State responded that the description of the victims in the indictment was sufficient to protect Defendants against double jeopardy. The prosecutor stated, "Following trial, Defendant[s] can show with accuracy what occurred so that [they] can plead a formal acquittal or conviction should another case somehow be filed." Thus, the State argued, the present indictment was sufficient because "Defendant[s are] on notice of the charges, the [c]ourt can enter a judgment, and double jeopardy is protected." Moreover, the State cited *Clark*, arguing that "'the identity of the victim does not serve to identify the crime.'" 2 S.W.3d at 235.

*Hearing*

At the hearing on Defendants' motions to dismiss, Defendant Bowen's counsel reiterated his reliance on *Wyatt*, saying,

> [A]s our Tennessee Supreme Court held in *Wyatt*, that in order for an indictment to afford double jeopardy protection from any future charge of attempted murder[,] because that case also was an attempted murder[,] it must expressly state that the attempt to kill was made against a specific victim on a date certain. So I submit that the indictment is insufficient.

Defendant Bowen's counsel also argued that, pursuant to *Warden v. State*, 381 S.W.2d 244 (Tenn. 1964) and *State v. Hill*, 954 S.W.2d 725 (Tenn. 1997) (*disagreed with by State v. Duncan*, 505 S.W.3d 480 (Tenn. 2016)), the indictment was insufficient because it merely draws "a legal conclusion. There is no specific allegation as to what these gentlemen did to allegedly commit this attempted murder. [The indictment] just regurgitates the language in the statute for attempted murder." Defendant Bowen's counsel also asserted that there was no way to confront and cross-examine victims who were not identified, thus violating the Confrontation Clause of the United States Constitution.

Defendant Smith's counsel argued that the State's reliance on *Clark* was misplaced:

> [I]n [the *Clark*] indictment, then they could have filed . . . a [b]ill of [p]articulars and had the State turn over more information concerning the specifics surrounding that case. Well, I filed a [b]ill of [p]articulars in this matter, your Honor, just because the [a]ppeals [c]ourts suggested that we do that. . . . I filed a [b]ill of [p]articulars requesting the identity of the victim -- of the alleged victims in this matter. But we know based on everything the State has said in the past they're not going to be able to turn over the identity of that victim or of those victims. It's not going to happen because they don't know.

Defendant Smith's counsel thus concluded that he could not adequately prepare for trial because he did not know the circumstances surrounding the alleged offense. He also stated that the indictment was insufficient for protecting against double jeopardy, which was not at issue in *Clark*:

> We don't know in ten years where I'll be, where you'll be, Judge, where anybody in this courtroom will be. But in ten years -- ten years from now somebody can come up and say hey, [Defendant] Smith tried to kill me at some point and he gets re-arrested. And it might -- and well after this case has maybe been tried and even acquitted or whatever could have happened, but he has -- he could be facing these same charges after a trial in ten years because of the lengthy statute of limitations and the complete lack of knowledge of who . . . these alleged victims are. So [Defendant] Smith is looking at not only having to go to trial on a case against somebody that we don't know, he's also exposed to the potential of going back to jail in the future because this person we don't know comes out and . . . files a claim well within the statute of limitations.

The prosecutor responded that the indictment distinguished the victims by their clothing as seen in the surveillance video. He argued that the indictment provided sufficient notice: "The State believes that the indictment sets forth the short and plain statement of the facts. [Defendants] know what the charges are. They know the date that they occurred. They know it's on video, and that video's been provided."

The prosecutor also argued that Defendants were protected against double jeopardy: "What happens on down the road is they're protected [against double jeopardy] in the sense that they know what we're talking about, when the event was, and

it's on video, which is unusual." He quoted *State v. Overton*, 245 S.W. 2d 188 (Tenn. 1951):

> ["T]he true test of the sufficiency of the indictment is not whether it could have been more definite and certain, but whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet[, a]nd if any other proceedings are taken against [Defendants] for a similar offense, whether the record shows with accuracy to what extent [Defendants] may plead a former acquittal or a conviction.["] . . .   That's their double jeopardy protection.

The prosecutor then played a portion of the surveillance video for the trial court. The surveillance video was included as an exhibit in the record on appeal. The video reflects that two men were walking on the street along a line of cars that were parallel parked. A white Hummer drove by firing two shots. The Hummer did not slow down or stop. The victim wearing light pants and a dark shirt dove to the ground between two of the vehicles. The victim wearing dark pants and a light shirt ducked behind a vehicle and returned six shots in the direction of the Hummer as it drove away. As the two victims stood near their vehicle, one person got into a vehicle four cars away and drove away. Next, another person got into a vehicle three cars away and drove away. Then, the victims got into their vehicle and drove away as the police approached the scene with lights flashing.

The prosecutor drew the court's attention to the two unidentified victims and three witnesses on the surveillance video. The prosecutor noted that two of the witnesses gave statements to police regarding the incident.[1] The prosecutor commented that, in statements to the police, Defendants "put themselves in the Hummer" where the shots came from. The following exchange occurred:

> [DEFENDANT BOWEN'S COUNSEL]: Remember.   There w[ere] 800 pages of discovery.   There's witnesses, witness statements.
>
> [THE COURT]: I didn't see the 800 pages of discovery.[2]
>
> [DEFENDANT BOWEN'S COUNSEL]: That -- that put our clients in the vehicle.   But I think the State would acknowledge to you -- but I can only

---

[1] The witness statements were not included in the record on appeal.

[2] The "800 pages of discovery" were not included in the record on appeal.

speak for [Defendant] Bowen that nobody has [Defendant] Bowen firing a shot at all. He's driving a car (indiscernible).[3]

[THE COURT]: Is there a shot coming out of the Hummer?

[THE STATE]: (Indiscernible) in the Hummer.

[DEFENDANT BOWEN'S COUNSEL]: There appears to be.

[DEFENDANT SMITH'S COUNSEL]: There appears -- there's a flash coming from the Hummer.

. . . .

[THE STATE]: [Defendant] Smith acknowledges having a gun and -- and (indiscernible) shooting.

[DEFENDANT SMITH'S COUNSEL]: [Defendant Smith] says that somebody was shooting (indiscernible.) They fired back. There was a (indiscernible) shooting.

The prosecutor and defense counsel explained that Defendants were originally charged with reckless homicide in the death of a "Mr. Booker" but that the State changed the indictment to charge Defendants with attempted first degree murder for shooting in the direction of the two unidentified victims as described in the indictment. Then the following exchange occurred:

[THE COURT]: But you don't have anybody that can even testify (indiscernible), or you don't even have the people that can come and say that [the victims] were the ones they were shooting at.

[THE STATE]: That is true.

[THE COURT]: I'm missing something because it's just not making sense.

[DEFENDANT SMITH'S COUNSEL]: Your Honor, you can dismiss the indictment because it does not protect against -- it does not provide

---

[3] The trial transcript showed several instances where the court reporter could not hear or understand what was said.

adequate notice to adequately prepare for trial and it does not protect against double jeopardy.

[THE COURT]: Okay.  But . . . as the [j]udge also, I have to look at both sides of it.  And I see this side very clearly.  Now, but there's another side that there's a family out there that has someone that has been killed and --

[DEFENDANT SMITH'S COUNSEL]: No, no.  That's not --

[THE COURT]: No, no, no.  I'm just trying to walk through it, okay?  That's all I can do is try to walk through it and make it make sense.  It might not make sense, ultimately.

[DEFENDANT BOWEN'S COUNSEL]: I don't think you're going to get there, but . . .

[THE COURT]: But what I do have is a family out there that and that's what I'm asking you, that you would have someone in their family that's deceased, but there's no person that you can charge to say that that was the person that committed the homicide.

[THE STATE]: It is a sad, sad situation.

[THE COURT]: I don't see how you're giving me --

[THE STATE]: But there is a victim.

[THE COURT]: -- any choice because, I mean, it's like even if we go to trial tomorrow, I put you -- if I put them on the stand tomorrow if we're going to trial tomorrow, the jury's going to see that there [are] no victims.  To be honest with you, you can't tell except for [--] and I have not seen these confessions that, you know, they're going to incriminate themselves in such a manner that the jury's going to say okay, that was them.

[THE STATE]: I have a huge mountain to try to get over and I'm trying to get over it today.

[THE COURT]: [T]hat's just not justice to say that at the moment just to say I'm going to give you the opportunity to try to climb over this mountain that almost doesn't even exist.  I mean, I want to give you what you want, but I -- you're not giving me legs to stand on right now . . . .  [Y]ou have to

understand also you're talking about two separate cases. The one that to me was the strongest one is the one that you're sending out the door. Can't do that, can't prove that . . . . You can't hold people in jail just because you think they may be . . .

[THE STATE]: I'm not holding them in jail for killing Mr. Booker . . . . I'm asking you to hold them in jail for shooting at these two guys that I don't know who they are.

[THE COURT]: And . . . until you find out who they are, you don't have a victim, do you?

[THE STATE]: I have unnamed victims, but -- I don't mean to be cute and give you a cute answer, but --

[THE COURT]: . . . But you don't have victims.

[THE STATE]: I don't have the names. No, I do not. Not that I -- and I do not have victims that I can put in that stand to say what happened . . . .

. . . .

[THE COURT]: [Y]ou brought it to me and I raised the bond and I put [Defendants] in jail because I thought that the victims were -- had been identified. [Defendants] had picked up two new charges, criminal attempt murder first degree, and that there were victims. And that's why I did that. And then you tell me later (indiscernible) I could not -- and maybe I did; it just went over my head -- that they could not identify. So all of a sudden that's what changed everything.

It's not -- you had a legitimate argument. Obviously if somebody's on bond and they picked up two new cases and they're more serious, then their bond should go up. No question. But when you tell me that you don't even -- I mean, it could be -- as far as you know, it could be two people in this courtroom sitting here right now that they were shooting at. That's not enough.

[THE STATE]: I understand, your Honor.

[THE COURT]: I don't mean -- you've really backed me into a wall where I really don't think I have a choice. I really don't think -- I mean, honestly,

I'm thinking now, I'm going through everything that you've told me. I don't think any reasonable person could do anything else until you finish your investigation. Not even talking about the double jeopardy thing. But until you finish your investigation and you can say that these were the people they were shooting at, we have witnesses that can say and confirm that those shots came out of that Hummer and that this is what happened, which is the case, and then the jury gets this case and the jury can decide. At this point I can't see even giving it to the jury at this point. You have shots fired. We have shots fired every night. We don't know where they came from.

[THE STATE]: Well, we keep talking about the 800 pages of discovery. I mean, I'd have to piece it together.

[THE COURT]: Well, I'm not privy to get -- to that . . . . So I don't know what's in there. I mean, I'm not privy to be able to pick apart and figure out and say well, here's something they didn't talk about, here's something they didn't talk about . . . . It's one thing not to know who the victims were, but then I thought there were enough people out there on the scene that could identify who -- that these were the people that shot from the car, these were the people that were around.

[THE STATE]: I don't have that today.

[THE COURT]: Okay.

[THE STATE]: I mean, I've got the people that were around.

[THE COURT]: You see what I'm saying? People that were around that could identify. But, I mean, to even basically identify somebody. You know, a certain color shirt, a certain color pants. I mean, you know, we're not even talking about a photospread, a photo up close. The people that are shooting, can we use the computer in some kind of way to make sure that we can see a face or something? . . . I personally think it's just premature. I don't think that you don't have a good case; I just think it's premature for where we're trying to go.

The trial court dismissed the case without prejudice and made the following statement:

I've considered the arguments by both attorneys for [D]efendants. I have considered the arguments, the written motions by the State. I've gone over the case law. This is one of those situations that is extremely unusual. I don't want to let anyone think that the case is by any means over, but at this time this case, as far as this [c]ourt is concerned, is somewhat premature to go forward and I'm going to dismiss it. But everybody needs to understand the investigation continues. And as soon as the State comes up with more information, evidence, photographs, witnesses -- because everything points to what the State is trying to prove. But as a [j]udge, right now there is not enough to go forward.

. . . .

The case will be dismissed at this time, but I want you to be -- everyone to be understanding and knowing that the investigation is going on, it will go on, and there is a very good chance that this case will come back in a few months . . . . Because when it comes back, based upon what I just said, based upon what you all said, all of that is going to have to be considered, whether it's in this courtroom or not in this courtroom. It's only being dismissed because of what I said. There's not enough evidence at this point to go forward. That's the only reason why it's being dismissed.

On the judgment forms dismissing the indictment, the trial court noted:

BASED ON THE DEFENDANT[S'] MOTION TO DISMISS, THE STATE'S RESPONSE, THE ARGUMENTS OF COUNSEL, AND THE ENTIRE RECORD HEREIN, ALL COUNTS ARE DISMISSED WITHOUT PREJUDICE.

The State timely appeals.

## Analysis

### Weight of the Evidence

The State argues that the trial court did not rule on the issue presented in Defendants' motions to dismiss but instead "determined *sua sponte* that the State's proof would not be strong enough to take to a jury at trial and dismissed the indictment without prejudice as a result." It contends that the trial court committed reversible error by ruling on factual questions, including issues "intertwined with the issue of guilt or innocence

that should have been left to the factfinders after the presentation of evidence at trial." Moreover, the State contends that the trial court compounded its error by failing to review all of the evidence before making a determination on the weight of the evidence.

Defendants respond that the trial court based its decision on their motions to dismiss and arguments of counsel, as it noted on the judgment forms dismissing the indictment.

Rule 12 of the Tennessee Rules of Criminal Procedure provides, in pertinent part, as follows:

> (b)(1) A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.
>
> . . . .
>
> (e) The court shall decide each pretrial motion before trial unless it finds good cause to defer a ruling until trial or after a verdict. The court shall not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal. When factual issues are involved in deciding a motion, the court shall state its essential findings on the record.

Tenn. R. Crim. P. 12. "A motion to dismiss under Rule 12 allows the trial court to decide issues that are ripe for resolution without a full trial on the merits." *State v. Sherman*, 266 S.W.3d 395, 403 (Tenn. 2008). "Generally speaking, pre-trial motions to dismiss that are 'capable of determination' involve questions of law, rather than fact." *Id*. (citing *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987) ("A Rule 12 . . . motion to dismiss is appropriately granted when it is based on questions of law rather than fact.")). "When considering such a motion, however, the trial court may make some findings of fact, so long as it does not encroach upon the province of the jury." *Id*. (citing *United States v. Jones*, 542 F.2d 661, 665 (6th Cir. 1976)). "Where the factual findings necessary to resolve the motion are intertwined with the general issue, a ruling must be deferred until trial since, in criminal cases, there simply is no pretrial procedure akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence." *State v. Goodman*, 90 S.W.3d 557, 561 (Tenn. 2002) (citing *State v. Vickers*, 970 S.W.2d 444, 447 (Tenn. 1998); *State v. Burrow*, 769 S.W.2d 510, 512 (Tenn. Crim. App. 1989)). "A defendant has no traditional procedural vehicle to challenge the sufficiency of the State's evidence prior to trial." *State v. Merriman*, 410 S.W.3d 779, 787 (Tenn. 2013).

Here, during the hearing, the trial court discussed at length the weight of the evidence, stating, "There's not enough evidence at this point to go forward[,]" and "I don't think that you don't have a good case; I just think it's premature[.]" Based on the trial court's discussion at the hearing, it appeared to be improperly weighing the evidence as it would for a motion for "summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence." *Goodman*, 90 S.W.3d at 561.

There are limited contexts in which a trial court may evaluate the weight of the evidence pre-trial. For example, in a *Ferguson* challenge, a court may weigh the adequacy of the State's evidence to "provide[] context to the lost or destroyed evidence, allowing the trial court to weigh the significance of the lost evidence in light of the other evidence and to determine an appropriate remedy, if one is required." *Merriman*, 410 S.W.3d at 790 (citing *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999)). Additionally, in deciding to aggregate separate thefts into a single count, a trial court may determine if there is "sufficient information before [the trial court] to establish that the prosecution had probable cause to conclude that the Defendant's five separate thefts arose 'from a common scheme, purpose, intent or enterprise[.]'" *State v. Jones*, 589 S.W.3d 747, 759 (Tenn. 2019) (quoting Tenn. Code Ann. § 39-14-105(b)(1)). Neither context arises in the instant case. Defendants do not contend that the trial court properly weighed the evidence here. We determine that the trial court's pretrial weighing of the evidence was improper, and, to the extent the trial court dismissed the indictment on this basis, it was error.

*Sufficiency of the Indictment*

Initially, we note that, based on the judgment forms, the trial court also based its dismissal of the indictment on Defendants' motions to dismiss and arguments of counsel. Therefore, although the trial court did not opine as to the merits of the sufficiency of the indictment issue, we determine that it did base its decision, at least in part, on the argument that the indictment language did not sufficiently protect Defendants against double jeopardy. Thus, we will address Defendants' claim of sufficiency of the indictment on the merits.

The State contends that, even if the trial court had ruled on the issue as presented by Defendants, that issue was not meritorious. The State argues that it was not required to list a specific victim for the crime of attempted first degree murder because "the identity of the victim does not serve to identify the crime. Thus, the identity of the victim is not an essential element of the crime." *Clark*, 2 S.W.3d at 235; *Jeffrey A. Simmons v. State*, No. W2007-01925-CCA-R3-HC, 2008 WL 2115443, at *1 (Tenn. Crim. App. May 20, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008).

Defendants respond that they are "exposed to the risk of one of these unknown alleged victims coming forward after a trial and making allegations that could arise to criminal attempt: first degree murder." Defendants argue that the State "cannot guarantee that one of the two alleged victims does not come forward sometime within the [fifteen]-year statute of limitations and make a claim that [Defendants] fired a gun at them but misremember certain facts including the specific date on which it occurred."

The sufficiency of an indictment is a question of law that we review de novo with no presumption of correctness. *State v. Patricia Ann Plasket*, No. M2008-01876-CCA-R3-CD, 2009 WL 1313365, at *1 (Tenn. Crim. App. May 11, 2009) (citing *Hill,* 954 S.W.2d at 727); *Sherman*, 266 S.W.3d at 403.

The Sixth and the Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee the accused the right to be informed of the nature and cause of the accusation. U.S. Const. amend. 6, 14; Tenn. Const. art. I, § 9. Our courts "have consistently interpreted these constitutional provisions to require that an indictment: 1) provide notice to the accused of the offense charged; 2) provide the court with an adequate ground upon which a proper judgment may be entered; and 3) provide the defendant with protection against double jeopardy." *Wyatt*, 24 S.W.3d at 324.

An indictment "must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Tenn. Code Ann. § 40-13-202 (2018). At common law, indictments were subject to strict pleading requirements because the elements of the offenses were not easily ascertained by reference to a statute. *Hill,* 954 S.W.2d at 728. However, today courts approach challenges to charging documents "'from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding.'" *Id.* (quoting *United States v. Purvis,* 580 F.2d 853, 857 (5th Cir. 1978)). Generally, charging documents must allege the material elements of the offense, and the "touchstone for constitutionality is adequate notice to the accused." *Id.* at 729. Specific reference to the statute defining the offense may be sufficient to place a defendant on notice of the offense with which he is charged. *Ruff v. State,* 978 S.W.2d 95, 97 (Tenn. 1998).

<u>Identity of the Victim as an Element of the Offense</u>

In *Clark*, the defendant was convicted of attempted aggravated robbery. 2 S.W.3d at 234. The defendant appealed, arguing that the indictment for attempted aggravated

robbery was "fatally deficient because it fail[ed] to name the victim." *Id*. at 235. "The defendant argue[d] that the victim's identity [wa]s essential to prosecution of the offense" of attempted aggravated robbery. *Id*. This court found that attempted aggravated robbery was "not classified as an offense based upon its perpetration against certain classes of individuals, such as police officers or children under a specified age." *Id*. "In other words, the identity of the victim does not serve to identify the crime." *Id*. Thus, this court concluded that "the identity of the victim is not an essential element of the crime, and [that] the charging instrument [wa]s not defective merely for failing to identify the victim." *Id*.

As charged in the present indictment, first degree murder is defined as the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202 (2017). A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

> (1) [i]ntentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (2017).

Here, Defendants' indictment does not identify by name the two victims of attempted first degree murder. However, attempted first degree murder is "not classified as an offense based upon its perpetration against certain classes of individuals, such as police officers or children under a specified age." *Clark*, 2 S.W.3d at 235. Therefore, the indictment was not insufficient for failure to name a specific victim since the identity of the victim is not an essential element of the offense. *Id*.; s*ee also Curtis Taylor v. State*, No. W2018-00807-CCA-R3-PC, 2020 WL 628530, at *3 (Tenn. Crim. App. Feb. 10, 2020) (concluding that because the name of the victim was not an element of attempted first degree murder, the indictment was sufficient to confer jurisdiction on the trial court and to charge an offense); *State v. Curtis Taylor*, No. W2013-01820-CCA-R3-CD, 2014

- 14 -

WL 4244024, at *2, n.1 (Tenn. Crim. App. Aug. 27, 2014) (finding an indictment for "attempted first degree murder of 'a person whose identity is to the Grand Jurors aforesaid unknown'" was sufficient because "the name of the victim is not an element of attempted first degree murder"), *perm. app. denied* (Tenn. Dec. 18, 2014); *State v. Thomas J. Faulkner, Jr.*, No. E2000-00309-CCA-R3-CD, 2001 WL 378540, at *8 (Tenn. Crim. App. Apr. 17, 2001) (stating that attempted first degree murder requires only a specific intent to kill "a person," not a specific intent to kill a specific person), *perm. app. denied* (Tenn. Sept. 10, 2001). The trial court erred in dismissing the indictment because it did not state the name of the victim.

## Bill of Particulars

Defendants agree that the court in *Clark* held that the identity of a victim "is not required for an indictment to pass constitutional muster." However, they note that the court in *Clark* stated that "'a defendant needing more information in order to adequately prepare for trial on the charges against him might move the court to order the prosecution to provide a bill of particulars[,]'"*see Clark*, 2 S.W.3d at 235, n. 3, which Defendants argue would have clearly provided the name of the victim in *Clark*. Thus, Defendants argue that because a bill of particulars would not provide Defendants with the identities of the victims in the present case, *Clark* does not apply.

Tennessee Rule of Criminal Procedure 7(c) states, "On defendant's motion, the court may direct the district attorney general to file a bill of particulars so as to *adequately identify the offense charged*." (emphasis added). Rule 7(c) "provides for a bill of particulars when needed by the defendant to know precisely what he or she is charged with. This provision is to be construed to serve that singular purpose, and is not means to be used for purposes of broad discovery." Tenn. R. Crim. P. 7, Adv. Comm'n Comments.

In the present case, the State conceded that it did not know the identities of the victims; thus, a bill of particulars would not produce their names. However, we conclude that the identities of the victims, and thus a bill of particulars, would be superfluous in this case to assist Defendants in "adequately identify[ing] the offense charged." Tenn. R. Crim. P. 7(c). The indictment provides the date and location of the offense, provides the clothing each victim was wearing, and identifies the surveillance video which shows the exact conduct charged. Defendants know precisely the offenses with which they are charged. Thus, Defendants' argument that *Clark* does not apply in the present case because a bill of particulars could not provide them with the names of the victims is unavailing.

- 15 -

<u>Double Jeopardy</u>

Defendants argue that, because the victims are unknown to the State, "it is impossible to guarantee that [Defendants are] not prosecuted twice for these same allegations." Defendants cite *Wyatt* to support their claim that the indictment does not pass constitutional muster, arguing that *Wyatt* requires a specifically named victim in an indictment for attempted first degree murder in order to protect against double jeopardy.

The State responds that the indictments sufficiently protect Defendants against double jeopardy. It contends that Defendants' reliance on *Wyatt* is misplaced, stating that *Wyatt* "did not establish required information that must be included in every indictment, but rather set forth some indicia of specificity that provided Mr. Wyatt with sufficient notice, in the aggregate, of the offense alleged against him in his particular case."

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, states, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, the Tennessee Constitution guarantees "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10. Both clauses provide three distinct protections: "(1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012).

In *Wyatt*, the petitioner pled guilty to attempted second degree murder and kidnapping. 24 S.W.3d at 319. The petitioner argued in his habeas corpus petition "that his conviction and sentence [we]re void because his indictment failed to allege an overt act, which is a material element of attempted first degree murder[.]" *Id*. at 323. The *Wyatt* indictment named the victim as "Billie Carey." *Id*. at 324. In concluding that the petitioner's indictment was sufficient, our supreme court stated that "by expressly stating that the attempt to kill was made against a specific victim on a date certain," the indictment offered the defendant "double jeopardy protection from any future charge of attempted murder against that victim on that date." *Id*.; *see also Michael Anthony Lewis v. Sharon Taylor, Warden*, No. E2013-02492-CCA-R3-HC, 2014 WL 1920619, at *4 (Tenn. Crim. App. May 13, 2014) (concluding that an indictment for attempted premeditated murder was sufficient because it "set forth the crime of criminal attempt to commit first degree premeditated murder in the words of the statute, named the victim, and named the month and year of the offense"), *perm. app. denied* (Tenn. Oct 15, 2014).

However, the language of *Wyatt* is not prescriptive, but descriptive; *Wyatt* does not require the identification of a victim of attempted first degree murder for an indictment to

be sufficient but instead states that the identification of a victim, along with the date and location of the attempted murder, protects against double jeopardy.  24 S.W.3d at 324.  Defendants' reliance on *Wyatt* for the proposition that a victim *must* be named for double jeopardy protection is misplaced.

Moreover, the State contends that the language of the indictment is sufficient to protect against double jeopardy concerns, arguing:

> The language [of the indictment] specifies the day on which the shooting happened, specifically references the surveillance videos that captured the shooting on film (from which even further information can be gleaned), and specifically differentiates the victims by the clothing that they were wearing.  If the victims were to come forward after the current prosecution has ended, the State and [D]efendants would have enough information to determine that the victims were speaking of the same shooting at issue in the present case, thereby precluding a second prosecution for the same offenses.  The motions to dismiss should have been denied even on the ground they raised.

We agree with the State's analysis.  While there may be a case in the future where an unknown victim in an indictment is insufficient protection against double jeopardy, this is not true in the present case.  Thus, we find that the indictment in the present case is sufficient to protect Defendants against double jeopardy.

## Conclusion

We find that the trial court erred in dismissing the indictment.  Accordingly, we reverse the judgments of the trial court, reinstate the indictment, and remand the case for proceedings consistent with this opinion.

_____
ROBERT L. HOLLOWAY, JR., JUDGE